THOMPSON, Presiding Judge.
Bank of America, N.A. (“Bank of America”), appeals from a judgment in favor of Evelyn J. Kinslow, as trustee of the Evelyn J. Kinslow Revocable Trust (“Kin-slow”). In the judgment, the trial court found that certain limited common elements assigned to a specific condominium unit were not subject to the mortgage Bank of America possessed as to that unit.
The evidence in the record on appeal indicates the following. Legacy Key is a condominium complex in Orange Beach. The complex contains 36 residential units. In addition to common elements of the complex, such as the swimming pool, the complex has the following “limited common elements”: 17 boat slips, 12 storage closets, and 8 carriage houses. The limited common elements were included in an amendment (“the first amendment”) to the declaration of condominium (“the declaration”), as required by § 35-8A-208(c), Ala. Code 1975, which is part of the Alabama Uniform Condominium Act (“the Act”), § 35-8A-101 et seq., Ala. Code 1975. The amendment provided that limited common elements would be appurtenant to the *829 units. It also allowed owners of units to reallocate limited common elements by an amendment to the declaration, which is required to be provided to the condominium association.
In December 2003, Ellen B. McKinney purchased Unit 903 in Legacy Key. The deed conveying the unit to McKinney included Unit 903, “together with Storage Closet Number 1” and “Boat Slip Number 6.” The deed stated that the storage closet and boat slip were appurtenances to Unit 903, in accordance with the declaration.
In July 2007 McKinney and her husband refinanced the original $322,700 loan that was used to purchase Unit 903 and obtained a new loan in the amount of $700,000. Bank of America was the lender, and it held a mortgage on Unit 903 to secure the loan. The mortgage document, which is referred to as the “Security Instrument” in that document (“the security instrument”), defined the property with a legal description of Unit 903, which legal description was attached to the security instrument. The legal description included the statement: “Together with the appropriate undivided interest in the common areas and facilities declared in [the declaration] to be appurtenant to the above described unit.” The security instrument also contained the following language regarding the property subject to the mortgage:
“TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the ‘Property.’ ”
Section 18 of the security instrument defined an interest in the property as “any legal or beneficial interest in the Property.” The security instrument provided that if the McKinneys sold or transferred all or any part of the property without Bank of America’s consent, then Bank of America could require immediate repayment of the loan in full.
On April 3, 2009, McKinney executed an amendment to the declaration, transferring Storage Closet Number 1 and Boat Slip Number 6 from Unit 903 to Unit 101. Kinslow is the owner of Unit 101. The record does not include the amount, if any, Kinslow paid McKinney for the right to use the storage closet and boat slip. The amendment was recorded in the Baldwin County Probate Court the same day it was executed.
Eight months later, on December 28, 2009, Ted Tessem, a title-company employee who “acted as agent to a transaction on” Unit 903, executed a scrivener’s affidavit revising the legal description of Unit 903 as it appeared in the attachment to the security instrument. In the affidavit, Tes-sem said the original security instrument “contains errors in the Legal Description” and that the revision “shall serve to correct the instrument referenced above which is incorrect due to a Scrivener error.” The revision added the following language to the legal description:
“TOGETHER WITH:
“Storage Closet Number 1, which is an appurtenance to the above Unit # 903 in accord with the Declaration of Condominium and Amendments thereto.
“Boat Slip Number 6, which is an appurtenance to the above Unit # 903 in accord with the Declaration of Condominium and Amendments thereto.”
In its brief on appeal, Bank of America states that the scrivener’s affidavit was recorded in the Baldwin County Probate Court on December 28, 2009. However, *830 the affidavit itself indicates that it was not recorded until February 9, 2010.
On August 2, 2010, Kinslow filed an action to quiet title to Storage Closet Number 1 and Boat Slip Number 6. She also sought -a judgment declaring that the amendment reallocating the storage closet and boat slip from Unit 903 to Unit 101 was valid and that the storage unit and boat slip were now for the exclusive use of Unit 101 and were not subject to Bank of America’s mortgage on Unit 903.
Kinslow and Bank of America each filed properly supported motions for a summary judgment. There is no dispute over the facts; the issues presented are clearly issues of law. After considering the motions, briefs, and arguments of the parties, in an order dated November 15, 2011, the trial court determined that the storage closet and boat slip were not appurtenances to Unit 903, the unit subject to the mortgage. It also found that those limited common elements were not described in the mortgage. Accordingly, it granted Kinslow’s motion for a summary judgment and asked her attorney to prepare a judgment.
In the judgment, entered on November 30, 2011, the trial court found that the exclusive use of limited common elements like the boat slip and the storage unit was not an appurtenance to Unit 903 such that the right was subject to the mortgage “in as much as this right was not set out or described in the mortgage as a right being conveyed to Bank of America.” Because the declaration allows limited common elements to be reallocated among units in the condominium complex, the trial court said, the exclusive right to use limited common elements does not “run with the land” but is a personal right of the unit owner that can be freely reallocated to another unit owner.
In reaching its conclusion, the trial court cited Miller v. Associated Gulf Land Corp., 941 So.2d 982, 985-86 (Ala.Civ.App.2005), for its definition of an appurtenant right, quoting the following from that case:
“In order for a covenant to be enforced as one that ‘runs with the land,’ it must both (1) have been intended by the parties creating it to run with the land and (2) touch and concern the land. See, e.g., Allen v. Axford, 285 Ala. 251, 231 So.2d 122 (1970); Smith v. First Sav. of Louisiana, FSA, 575 So.2d 1033 (Ala.1991); Patterson v. Atlantic Coast Line R. Co., 202 Ala. 583, 589, 81 So. 85, 91 (1919) (noting that, in keeping with the seminal English case known as ‘Spencer’s case’ (5 Coke, 16), ‘a covenant will not run with the land if it be merely collateral, and doth not touch or concern the thing demised’). In discussing these requirements, we find it convenient to utilize the following definitions stated in the Restatement (Third) of PropeHy (Servitudes) § 1.5 (2004):
“ ‘(1) “Appurtenant” means that the rights or obligations of a servitude are tied to ownership or occupancy of a particular unit or parcel of land. The right to enjoyment of an easement or profit, or to receive the performance of a covenant that can be held only by the owner or occupier of a particular unit or parcel, is an appurtenant benefit. A burden that obligates the owner or occupier of a particular unit or parcel in that person’s capacity as owner or occupier is an appurtenant burden.
“ ‘(2) “In gross” means that the benefit or burden of a servitude is not tied to ownership or occupancy of a particular unit or parcel of land.
“ ‘(3) “Personal” means that a servitude benefit or burden is not transferable and does not run with land. *831 Whether appurtenant or in gross, a servitude benefit or burden may be personal.’
“Turning first to the requirement that the covenant have been intended by the parties creating it to run with the land, we observe that the deed from AGLC to Gilbreath expressly addresses this issue. First, as to the burden of the covenant, the deed restricts the use of what is now the Miller property ‘by the Grantees, their heirs and assigns.’ Further, it specifically provides that the burdened property (‘the servient estate’) shall ‘never be used for a trailer park or any other commercial purpose.’ (Emphasis added.) Even plainer and more to the point, the deed expressly states that ‘the burden of this restrictive covenant shall run with said lands and shall be binding on the grantees, their heirs and assigns.’ (Emphasis added.)”
(Footnote omitted.)
The trial court reasoned that because the declaration gives unit owners the right to transfer the right of exclusive use of a limited common element to another unit owner, that use is “merely collateral” to the real property covered by the mortgage and is not tied to ownership or occupancy of a particular unit.
The trial court further cited authority for the proposition that a contest over property rights is governed by the deed in question. In bracketed language, the trial court extended that proposition to cover the mortgage in question. “Here the mortgage to Bank of America did not manifest any objective intent on the part of McKinney to transfer or encumber her rights as set out in the First Amendment [to the declaration] concerning the limited common elements assigned to her unit.” The trial court then entered a judgment in favor of Kinslow and denied Bank of America’s motion for a summary judgment. Bank of America appealed to our supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
Bank of America argues that the trial court erred in finding that Storage Closet Number 1 and Boat Slip Number 6 are not appurtenant to Unit 90S. Specifically, it contends that the Act, the Commissioners’ Commentary to the Act, the declaration, and the first amendment to the declaration make clear that limited common elements can be used only in conjunction with a unit. In other words, Bank of America asserts that a limited common element is appurtenant to a unit and not to a unit owner.
Bank of America cites § 35-8A-208 in support of its assertion that the limited common elements are appurtenant to a unit, rather than an exclusive right granted to a unit owner. That statute provides:
“(a) Except for the limited common elements described in section 35-8A-202(2) and (4), the declaration must specify to which unit or units each limited common element is allocated. An allocation may not be altered without the consent of the unit owners whose units are affected.
“(b) Except as the declaration otherwise provides, a limited common element may be reallocated by an amendment to the declaration executed by the unit owners between or among whose units the reallocation is made. The persons executing the amendment shall provide it to the association, which shall record it and the cost shall be borne by the persons executing the amendment. The amendment shall be recorded and indexed in the names of the parties and the condominium.
“(c) A common element not previously allocated as a limited common element may not be so allocated except pursuant to provisions in the declaration made in *832 accordance with section 35-8A-205(a)(7). The allocations must be made by amendments to the declaration.”
(Emphasis added.)
The rules this court employs in interpreting a statute are well settled: “Words used in the statute must be given then-natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.” Tuscaloosa Cnty. Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa Cnty., 589 So.2d 687, 689 (Ala.1991). “[T]he first rule of statutory construction [is] that where the meaning of the plain language of the statute is clear, it must be construed according to its plain language.” Ex parte United Serv. Stations, Inc., 628 So.2d 501, 504 (Ala.1993). “Principles of statutory construction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.” Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001).
Here, the plain language § 35-8A-208 makes clear that the limited common elements are appurtenant to a unit in a condominium. Moreover, the first amendment to the Legacy Key declaration contemplates that the limited common elements would be appurtenant to a specific unit. The first amendment includes an exhibit that allocates specific carriage houses, storage closets, and boat slips to specific units. As to storage closets, the first amendment provides:
“In accordance with § 35-8A-208 ... each storage closet allocated as a Limited Common Element to a unit designated in this Amendment filed by the Developer, may be allocated. Each unit so designated shall be entitled to an exclusive easement for the use and enjoyment of said storage closet allocated to that unit, but such right shall not entitle owner to make any structural changes thereof, nor use it for any commercial activities, nor for any other use except in accord with the guidelines prepared by the Association and amended from time to time. Unit owners, in accordance with § 35-8A-208 ... may re-allocate a storage closet by an amendment to the Declaration.”
(Emphasis added.)
Similarly, as to the boat slips, the first amendment provides:
“In accordance with Section 35-8A-208 ... each Boat Slip allocated as a Limited Common Element to a Unit designated in this amendment filed by the Developer, may be reallocated. Each Unit so designated shall be entitled to an exclusive easement for the use and enjoyment of said Boat Slip(s) allocated to that Unit, but such right shall not entitle an Owner to construct anything thereon nor change any structural part thereof, nor use it for any commercial activities other than as may be constructed or changed in accord with guidelines prepared by the Association and amended from time to time. Unit Owners, in accordance with Section 35-8A-208 ... may reallocate a Boat Slip by an amendment to the Declaration.”
(Emphasis added.)
In determining that limited common elements are not appurtenant to specific units in Legacy Key, the trial court relied on Miller v. Associated Gulf Land Corp., supra. In Miller, the issue was whether a restrictive covenant contained in a deed was personal to a previous purchaser of a parcel of land or whether the covenant ran with the land. This case does not involve restrictive covenants within a deed, however. Instead, the rights of Legacy Key unit owners are governed by the Act, the decía- *833 ration, and the amendments to the declaration. Because the applicable authority is explicit and unambiguous in stating that limited common elements are appurtenant to a unit in a condominium, Miller has no application in this ease, and the trial court’s reliance on Miller was misplaced.
There is no doubt that the plain language of both the Act and the Legacy Key declaration provide that a limited common element is appurtenant to a unit. Accordingly, the trial court erred as a matter of law in its determination that the boat slip and the storage closet were not appurtenant to Unit 903.
With the determination that the limited common elements at issue — the boat slip and storage closet — are appurtenant to McKinney’s unit, we turn now to Bank of America’s contention that the trial court erred in finding that those limited common elements are not subject to the terms of the mortgage.[1] Bank of America correctly points out that Alabama courts previously have not been called on to address this issue. However, it cites as persuasive authority a Virginia case, Shehadeh v. Fountains at McLean Condominium Unit Oumers Association, 79 Va. Cir. 103 (2009). Although Sheha-deh is not exactly on point, we do find it to be instructive. In Shehadeh, Robert Hart purchased a condominium unit at Fountains at McLean. The deed of conveyance encompassed the unit and “‘the limited common elements appurtenant thereto, including limited common element parking space(s) No. 0-333 and 0-332 established by condominium instruments’ ” that had been properly recorded. l'd Hart then conveyed the property to Samuel L. White, P.C. The deed of trust, which Bank of America states in its brief is the equivalent of a mortgage, used the same language as the deed conveying the property to Hart, which included references to the limited common elements appurtenant to the unit and specifying the two parking spaces appurtenant to the unit. Id. The Virginia court held that the exclusive right to use limited common elements can be subject to a mortgage.
In this case, however, unlike the parking spaces involved in Shehadeh, the boat slip and the storage closet assigned to McKinney’s unit — Unit 903 — were not specifically included in the description of the property subject to the mortgage. Therefore, we must determine whether the failure to include the limited common elements in the description of the property excludes them from the property subject to the mortgage.
Section 35-8A-204 sets forth what constitutes a valid legal description of a specific unit in a condominium:
“A description of a unit which sets forth the name of the condominium, the recording data for the declaration, the county in which the condominium is located, and the identifying number of the unit, is a sufficient legal description of that unit and all rights, obligations, and interests appurtenant to that unit which were created by the declaration or bylaws.”
(Emphasis added.) The Commissioners’ Commentary to § 35-8A-204 states:
*834 “1. The intent of this section is that no description of a unit in a deed, lease, deed of trust, mortgage, or any other instrument or document shall be subject to challenge for failure to meet any common law or other requirements so long as the requirements of this section are satisfied, and so long as the declaration itself, together with the plats and plans which are a part of the declaration, provides a legally sufficient description.
“2. The last sentence makes clear that an instrument which does meet those requirements includes all interest appurtenant to the unit. As a result, it will not be necessary under this Act to continue the practice, common in some jurisdictions, of describing the common element interests, or limited common elements, that are appurtenant to a unit in the instrument conveying title to that unit.”
(Emphasis added.)
Because we have concluded that limited common elements are appurtenant to a specific unit, we also conclude that any description meeting the requirements of § 35-8A-204 is sufficient to encompass the limited common elements “appurtenant” to that unit within the property subject to a mortgage. The mortgage that Bank of America held on McKinney's unit defined the property subject to the mortgage as follows:
“Unit 903 of Legacy Key, a condominium, located in Baldwin County, Alabama according to that certain Declaration of Condominium of Legacy Key, a condominium, together with all exhibits attached thereto, including the By-Laws of Legacy Key Condominium Association, Inc., dated November 14, 2003, and recorded at Instrument # 772977, of the records in the Office of the Judge of Probate of Baldwin County, Alabama. Together with the appropriate undivided interest in the common areas and facilities declared in said Declaration to be appurtenant to the above described unit.”
That description sets forth the name of the condominium, the recording data for the declaration, the county in which the condominium is located, and the identifying number of the unit. At the time the mortgage was created, the boat slip and storage closet at issue were assigned to Unit 903. Because the legal description of unit 903 included in McKinney’s mortgage met the requirements of § 35-8A-204, the limited common elements assigned to Unit 903, including the boat slip and the storage closet, were also subject to the mortgage, even though they were not specifically included in the legal description. Therefore, the trial court also erred as a matter of law in finding that the limited common elements were not subject to the mortgage. Because of our holdings in this case, we pretermit discussion of the other issues that Bank of America has raised on appeal.
For the reasons set forth above, the judgment is reversed, and we remand the cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.

. There is a distinction between "common elements” and "limited common elements.” The Act defines a common element as "[a]ll portions of a condominium other than the units.” § 35-8A-103(4). Common elements include things like swimming pools, barbeque areas, etc. A limited common element is defined as a portion of the common elements allocated by the declaration or an amendment to the declaration "for the exclusive use of one or more but fewer than all of the residents.” § 35-8A-103(16). Limited common elements include things like assigned parking spaces, boat slips, storage units, etc.